UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARINA S.,[1] | ) | CIVIL ACTION NO. 4:23-CV-0027 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Marina S. ("Plaintiff"), is an adult who lives in the Middle District of Pennsylvania. She seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that federal courts refer to social security plaintiffs by their first name and last initial. We adopt this recommendation.

supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On November 18, 2020, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15; Doc. 7-2, p. 16).  In these applications, Plaintiff alleged she became disabled on January 30, 2018, when she was twenty-five years old, due to the following conditions: bipolar mania, anxiety, back pain, restless leg syndrome, irritable bowel syndrome, stomach ulcers, and hidradenitis suppurativa. (Admin. Tr. 15, 29, 332; Doc. 7-2, pp. 16, 30, Doc. 7-6, p. 16). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, walk, sit, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 375; Doc. 7-6, p. 60). Plaintiff alleges her conditions also affect her memory. *Id.* Plaintiff graduated high school and earned a CNA certification at Harrisburg Community College. (Admin. Tr. 333; Doc. 7-6, p. 17). Before the onset of her impairments, Plaintiff worked as a certified nurse's assistant. (Admin. Tr. 29; Doc. 7-2, p. 30). Plaintiff continued to work during 2020 after the alleged onset date of disability, and during 2021, but her earnings did not equal or exceed the established SGA threshold amount. (Admin. Tr. 19; Doc. 7-2, p. 19).

On April 22, 2021, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 7-2, p. 16). On July 23, 2021, Plaintiff's applications were denied on reconsideration. *Id.* On August 13, 2021, Plaintiff requested an administrative hearing. *Id.*

On December 14, 2021, Plaintiff and her counsel, appeared during a telephone hearing before Administrative Law Judge Lawrence J. Neary (the "ALJ"). (Admin. Tr. 15, 30; Doc. 7-2, pp. 16, 31). During the hearing, Plaintiff amended the alleged onset date of disability to March 20, 2020. (Admin. Tr. 15; Doc. 7-2, p. 16). On March 1, 2022, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 30; Doc. 7-2, p. 31). On March 5, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 261; Doc. 7-4, p. 114).

On November 22, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 7-2, p. 2).

On January 8, 2023, Plaintiff filed a civil action in this court. (Doc. 1). In her complaint, Plaintiff alleges that substantial evidence does not support the ALJ's decision. *Id*. As relief, Plaintiff requests the Court "enter an Order reversing the decision of the Appeals Council, as it relates to their denial of the request for review of the decision of the Administrative Law Judge," and award benefits. (Doc. 1, p. 7). As this Court has pointed out to Plaintiff's counsel at least three times before, "[n]o

statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."[2] The Court construes Plaintiff's complaint to request the Court reverse the administrative decision of the ALJ, remand Plaintiff's case for a new hearing, or award benefits.

On March 8, 2023, the Commissioner filed an answer. (Doc. 6). In the answer, the Commissioner maintains that the decision denying Plaintiff's applications was made in accordance with the law and is supported by substantial evidence. (Doc. 6, ¶ 6). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 7 *et seq.*).

Plaintiff's Brief (Doc. 11) and the Commissioner's Brief (Doc. 14) have been filed. Plaintiff did not file a reply. This matter is now ready to decide.

## III.    LEGAL STANDARDS

Before looking at the merits of this case, the Court will review the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by

---

[2] *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

---

[3] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews*, 239 F.3d at 593 ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from

---

6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*,

trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a

---

900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15] Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[16]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

---

[14] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[16] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[17] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[18] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[21] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[22]

---

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[20] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

[21] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

## IV.  DISCUSSION

Plaintiff's brief "is unfocused and touches on many issues."[23] The Court notes

that Plaintiff incorrectly alleges her claims were denied both at step four and step

five. (Doc. 11, p. 7). Additionally, Plaintiff

> raises certain arguments only in passing, and without citations to the
> record or caselaw. [*See* Doc. 11]. We will neither develop legal
> arguments on a party's behalf based on passing mention of error, nor
> will we dig through the voluminous record to develop such arguments.
> *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017)
> (memorandum opinion) (citing *Carmickle v. Commissioner, Social Sec.
> Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court does not
> need to address arguments that were made without specificity); *Indep.
> Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the
> court cannot construct arguments for an appellant, and it will only
> examine issues specifically and distinctly argued in an appellant's
> initial brief); *see also U.S. v. Dunkel*, 927 F.2d 944 (7th Cir. 1991)
> ("Judges are not like pigs, hunting for truffles buried in briefs."); *see
> also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10,
> 2008) ("We are not pigs searching for truffles and are unwilling to
> search through the massive record that has been developed in this case
> to find evidence of these alleged violations.").[24]

We will accordingly treat those arguments with the brevity Plaintiff does. We also

note for Plaintiff's benefit that this Court's Local Rules *require* that a plaintiff's

arguments "be supported by specific reference to the portion of the record relied

---

[23] *Nazario Vargas v. O'Malley*, No. 1:23-CV-00959, 2024 WL 4351447, at
*4 (M.D. Pa. Sept. 30, 2024).

[24] *Nazario Vargas*, 2024 WL 4351447, at *4.

upon and by citations to statutes, regulations and cases supporting plaintiff's position."[25]

Plaintiff alleges three errors in her brief:

(1)    Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including bipolar disorder, anxiety disorder, post-traumatic stress disorder and borderline personality disorder?

(2)    Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or even mentioned in his decision, including Plaintiff's diagnosed and treated Hidradenitis Suppurativa, spinal stenosis, osteoarthritis of the knees or generalized anxiety disorder?

(3)    Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions and limitations from Plaintiff's treating sources, Dr. Beth Townsend or Dr. T. Wangdi Sherpa, as compared to the opinions from the State Agency Consultants?

(Doc. 11, pp. 1-2). We begin our analysis by summarizing the ALJ's findings. We will then address Plaintiff's third argument regarding the ALJ's assessment of the opinion evidence. Finally, we will address Plaintiff's first and second arguments regarding the RFC together.

---

[25] Local Rule 83.40.4(c) (available at https://www.pamd.uscourts.gov/sites/pamd/files/LR120114.pdf) (last accessed Oct. 28, 2024).

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his March 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2024. (Admin. Tr. 17; Doc. 7-2, p. 18). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 20, 2020 (Plaintiff's alleged onset date) and March 1, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17-18; Doc. 7-2, pp. 18-19).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: bipolar disorder, anxiety disorder, post-traumatic stress disorder, and borderline personality disorder. (Admin. Tr. 18; Doc. 7-2, p. 19). The ALJ also identified the following medically determinable non-severe impairments: obesity, restless leg syndrome, kyphosis (rounded/hunched upper back), lumbar spine impairment, thoracic spine impairment, hidradenitis suppurativa (chronic inflammatory skin condition characterized by painful lesions), acne, folliculitis (inflamed hair follicles), tinea versicolor (a fungal infection that interferes with the normal pigmentation of the skin), irritable bowel syndrome, impaired fasting glucose (a pre-diabetes condition),

gastroesophageal reflux disease ("GERD"), allergic rhinitis (hay fever), and obstructive sleep apnea. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 20-22; Doc. 7-2, pp. 21-23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in all ranges of work work as defined in 20 C.F.R. § 404.1567 and 20 C.F.R. § 416.967 except:

> She is limited to simple, routine tasks with only occasional changes in the work setting and only occasional interaction with the public.

(Admin. Tr. 22; Doc. Doc. 7-2, p. 23).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 28-29; Doc. 7-2, pp. 29-30).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 29-30; Doc. 7-2, pp. 30-31). To support his conclusion, the ALJ relied on testimony given by a vocational expert ("VE") during Plaintiff's administrative hearing and cited the following four (4) representative occupations:

order picker, DOT #922.687-058; janitor, DOT #358.687-010; housekeeper, cleaner, (no DOT# provided); and mail sorter, DOT #209.687-026 . *Id.*

## B. WHETHER THE ALJ ERRED IN HIS CONSIDERATION OF THE OPINION EVIDENCE

Plaintiff argues, "the ALJ erred and abused his discretion in failing to afford proper weight to opinions and limitations from Claimant's treating sources, Dr. Beth Townsend or Dr. T. Wangdi Sherpa, as compared to the opinions from the State Agency Consultants." (Doc. 11, p. 24).

Before evaluating this argument, the Court must clarify the requirements of the current regulations regarding opinion evidence.

On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.* Further, under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c). Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[Plaintiff] appears to conflate the new regulations with the old. She describes the ALJ as "assign[ing] persuasive *weight* to the opinions of" [the State Agency Consultants] [ ] [ ]. [Doc. 11, p. 30) (emphasis added). We note the above paradigm shift in regulations so it is

abundantly clear what standard ALJs are held to presently, and what standard we will apply hereafter.[26]

The Court also notes Plaintiff does not properly cite the correct regulations she attempts to rely on. (Doc. 11, pp. 24-30). Plaintiff cites to "20 C.F.R. § 404.1520(a)," and "20 C.F.R. § 1520(c)." *Id*. The Court presumes Plaintiff intended to cite to 20 C.F.R. § 404.1520c(a) and 20 C.F.R. § 404.1520c(c), as well as 20 C.F.R. § 416.920c(a) and 20 C.F.R. § 416.920c(c) as this case involves claims under Title II and Title XVI.

Plaintiff's treating physicians, Dr. T. Wangdi Sherpa, M.D. (family practice), and Dr. Beth Townsend, M.D. (psychiatrist), submitted a physical RFC assessment and mental RFC assessment, respectively. (Admin. Tr. 2927-2932; Doc. 7-11, pp. 378-383); (Admin Tr. 2974-2978; Doc. 7-11 pp. 425-429). Plaintiff argues that the ALJ "did not properly analyze these treating source opinions using the factors under 20 C.F.R. § 1520(c) [sic], and offer [sic] little, to no analysis of their opinions, other than stating their opinions and then affording them no weight." (Doc. 11, p. 27; *see also* Doc. 11, pp. 28-29).

Under the applicable regulations, the ALJ uses five factors in evaluating the persuasiveness of a medical opinion, from a treating source or otherwise: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization,

---

[26] *Nazario Vargas*, 2024 WL 4351447, at *5 (emphasis in original).

and (5) other factors.[27] The applicable regulations explain that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).[28] "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[29] Consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[30]

The applicable regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision."[31] The ALJ "may, but [is] not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when

---

[27] 20 C.F.R. § 404.1520c(c)(1)-(5); 20 C.F.R. § 416.920c(c)(1)-(5).
[28] 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).
[29] 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).
[30] 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).
[31] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[they] articulate how [they] consider medical opinions and prior administrative medical findings in [a claimant's] case record."[32] When the ALJ finds "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, [they] will articulate how [they] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in [a claimant's] determination or decision."[33]

Plaintiff's argument that the ALJ "did not properly analyze these treating source opinions using the factors under 20 C.F.R. § 1520(c) [sic], and offer little, to no analysis of their opinions, other than stating their opinions and then affording them no weight,"[34] (Doc. 11, p. 27), and did not analyze Dr. Sherpa or Dr. Townsend's opinions in accord with "the factors under 20 C.F.R. § 1520(c) [sic]," (Doc. 11, p. 28-29), misrepresents of the ALJ's decision.

About Dr. Sherpa's opinion, the ALJ wrote,

T. Wangdi Sherpa, M.D., completed an opinion that indicates the claimant constantly experiences pain or other symptoms severe enough

---

[32] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[33] 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3).

[34] Plaintiff is technically correct that the ALJ did not assign any weight to the opinions. That is because the ALJ was not required to under the correct regulations which did away with assigning weight to medical opinions, instead requiring an ALJ to evaluate the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

to interfere with attention and concentration needed to perform even simple work tasks; is not capable of even low stress jobs; can only walk one block without rest or severe pain; can sit for five minutes at one time; can stand for five minutes at one time; sit for less than two hours during an eight hour work day; stand/walk less than two hours during an eight hour work day; the claimant needs periods of walking around during an eight hour work day; the claimant needs a job that permits shifting positions at will from sitting, standing, or walking; the claimant would need to take unscheduled breaks; occasionally lift and carry less than ten pounds; rarely lift and carry ten pounds; never lift and carry twenty pounds; never lift and carry fifty pounds; rarely look down, turn her head to the left or right; rarely look up; rarely hold her head in a static position; never twist, stoop, crouch, squat, climb ladders or stairs; and the claimant's impairments affect her ability to follow even simple instructions; the claimant would miss work on a regular basis; the claimant would miss work one or more days a week; and the claimant would be off task more than fifteen percent of the work day (Exhibit 17F). In support of the opinion, Dr. Sherpa referenced diagnoses of spinal stenosis and bipolar disorder as well as symptoms of back pain, depression, anxiety, and fatigue. However, Dr. Sherpa's opinion is not consistent with the lack of any persistent treatment for symptomatology pertaining to the claimant's spine impairment since her amended alleged onset date of disability; documented clinical examination findings of a cooperative attitude, normal speech, a good mood, no mood lability, an organized thought process, normal speech, a normal thought process, relaxed behavior, age-appropriate language, a calm mood, an appropriate affect, a normal thought process, normal motor activity, normal orientation, and an appropriate affect; and the documented clinical notations during May 2020, June 2020, July 2020, September 2020, November 2020, December 2020, January 2021, February 2021, May 2021, June 2021, July 2021, September 2021, and October 2021 as cited above. Thus, the undersigned does not find Dr. Sherpa's opinion persuasive.

(Admin. Tr. 27-28; Doc. 7-2, pp. 28-29).

About Dr. Townsend's opinion, the ALJ wrote,

Beth Townsend, M.D., completed an opinion that indicates the claimant has limitations pertaining to understanding, remembering, or applying

information, concentration, persistence, and maintaining pace, interacting with others, and adapting and managing oneself; the claimant's impairment would substantially interfere with her ability to work on a regular and sustained basis at least twenty percent of the time; and the claimant can work on a regular and sustained basis in light of her mental impairment (Exhibit 19F). In support of the opinion, Dr. Townsend referenced the claimant's diagnoses of bipolar disorder and generalized anxiety disorder. However, the entirety of the opinion is not consistent with documented clinical examination findings of a cooperative attitude, normal speech, a good mood, no mood lability, an organized thought process, normal speech, a normal thought process, relaxed behavior, age appropriate language, a calm mood, an appropriate affect, a normal thought process, normal motor activity, normal orientation, and an appropriate affect as well as the documented clinical notations during May 2020, June 2020, July 2020, September 2020, November 2020, December 2020, and January 2021, February 2021, May 2021, June 2021, July 2021, September 2021, and October 2021 as cited above. Moreover, Dr. Townsend's opinion is somewhat internally inconsistent as it indicates the claimant's impairment would substantially interfere with her ability to work on a regular and sustained basis at least twenty percent of the time but also indicates the claimant can work on a regular and sustained basis in light of her mental impairment. Thus, the undersigned finds Dr. Townsend's opinion partially persuasive to the extent it is consistent with the undersigned's determination regarding the claimant's residual functional capacity.

(Admin. Tr. 27; Doc. 7-2, p. 28).

Contrary to Plaintiff's assertion, the ALJ explicitly and thoroughly considered the supportability and consistency of Dr. Sherpa and Dr. Townsend's opinions, and adequately articulated his persuasiveness analysis. (Admin. Tr. 27-28; Doc. 7-2, pp. 28-29). The ALJ noted that both Dr. Sherpa and Dr. Townsend referenced Plaintiff's diagnoses and symptoms, as relevant to their assessments. *Id*. The ALJ then noted that Dr. Sherpa and Dr. Townsend's opinions were inconsistent with the documented

clinical examination findings of record covering the relevant period, referring back to the analysis of those records he made earlier in the decision. *Id*. Earlier in the decision, the ALJ comprehensively reviewed the clinical examination findings and notations from the relevant period for the months and years he cites. (Admin. Tr. 24-25; Doc. 7-2, p. 25-26). To the extent Plaintiff is arguing that the ALJ did not articulate how he considered the factors in 20 C.F.R. § 404.1520c(c)(3)-(5) and 20 C.F.R. § 416.920c(c)(3)-(5), because the ALJ did not find any medical opinions equally persuasive about the same issue but not exactly the same, he was not required to explicitly explain how he considered those additional factors.[35]

Plaintiff also argues that "the ALJ held Dr. Townsend's opinions to be partially persuasive to the extent that she agreed with his RFC, without pointing to which opinions specifically he was referring to, and it should be noted that none of Dr. Townsend's opinions appear to be part of the ALJ's RFC." (Doc. 11, pp. 29-30). Plaintiff is incorrect that the RFC includes none of Dr. Townsend's opined limitations. The ALJ limited Plaintiff to "simple, routine tasks with only occasional changes in the work setting and only occasional interaction with the public." (Admin. Tr. 22; Doc. 7-2, p. 23). In her opinion, Dr. Townsend opined that Plaintiff had limitations in understanding, remembering or applying information, interacting with others, sustaining concentration, persistence or pace, and in adapting or

---

[35] 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3).

managing oneself. (Admin. Tr. 2975-2977; Doc. 7-11, pp. 426-428). The ALJ noted these limitations in the first sentence of his paragraph analyzing the persuasiveness of Dr. Townsend's opinion: "Beth Townsend, M.D., completed an opinion that indicates the claimant has limitations pertaining to understanding, remembering, or applying information, concentration, persistence, and maintaining pace , interacting with others, and adapting and managing oneself . . . ." (Admin. Tr. 27; Doc. 7-2, p. 28). Plaintiff is correct that the ALJ does not explicitly point to which limitations opined by Dr. Townsend he found consistent with his RFC determination, writing that "the undersigned finds Dr. Townsend's opinion partially persuasive to the extent it is consistent with the undersigned's determination regarding the claimant's residual functional capacity." (Admin. Tr. 27; Doc. 7-2, p. 28). Plaintiff, however, makes no argument that the ALJ was required to point to those limitations he included in the RFC, or that his failure to do so is a harmful error.[36] The Court will not make Plaintiff's arguments for her.

---

[36] Social Security appeals are subject to a cautious harmless error analysis. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). *See also Stelzman v. Kijakazi*, No. 1:22-CV-82, 2023 WL 114053, at *14 (M.D. Pa. Jan. 5, 2023). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411-12 (2009))." A claimant carries the burden of showing he was prejudiced by that error, that is, but for the error there would have been a different result. *Hyer*, 72 F. Supp. 3d at 494.

Next, Plaintiff argues that the ALJ "assigned persuasive weight to the opinions of the State Agency Consultants and adopted many of the limitations they noted in her RFC, despite the fact that the State Agency consultants **never examined Claimant and rendered their opinions without many of the medical records submitted in this matter**." (Doc. 11, p. 30) (emphasis in original). Plaintiff "appears to rely on bold text to carry much of this argument."[37] In any event, "State agent opinions merit significant consideration . . . ."[38] "[T]he mere fact that some additional medical evidence is received after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions."[39] Here, the ALJ properly considered and articulated why he found the state agency consultants' opinions to be persuasive. The ALJ noted that the state agency consultants provided explanatory comments including references to Plaintiff's treatments and limitations related to her impairments. (Admin. Tr. 26-27; Doc. 7-2, pp. 27-28). The ALJ also found that the state agency opinions were consistent with the record as a whole, providing a thorough discussion of the medical evidence in the record that was consistent with the opinions. *Id.* As to the state agency opinions opining on limitations from Plaintiff's mental impairments, the ALJ stated that "to

---

[37] *Dejesus v. O'Malley*, No. 1:23-CV-00977, 2024 WL 4351449, at *7 (M.D. Pa. Sept. 30, 2024).

[38] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[39] *Dejesus*, 2024 WL 4351449, at *7 (citing *Chandler*, 667 F.3d at 361).

more fully accommodate [Plaintiff's] symptoms related to her mental impairments," he crafted a "somewhat more restrictive residual functional capacity than is indicated by the opinions" of the state agency consultants. *Id*. Accordingly, the ALJ the ALJ properly considered and articulated why he found the state agency consultants' opinions to be persuasive.

Finally, Plaintiff argues,

it should be noted that the opinions and limitations from the State Agency Consultants were contrary to those from Claimant's treating sources, and the medical record when considered as a whole. As limitations opined by Claimant's treating sources were consistent with the medical record, the ALJ should have included the limitations noted above, as they based their opinions concerning limitations for Claimant upon their own observations.

(Doc. 11, p. 30). This appears to the Court to be an invitation from Plaintiff to reevaluate the persuasiveness of the medical opinions. This we may not do. Our analysis is cabined to whether substantial evidence supports the ALJ's findings.[40] For the reasons explained above, we find the ALJ did not err in his consideration of the medical opinion evidence, and his persuasiveness analysis of the medical opinions is supported by substantial evidence.

---

[40] 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

### C.   WHETHER THE ALJ ERRED AND ABUSED HIS DISCRETION BY FAILING TO CONSIDER LIMITATIONS FROM PLAINTIFF'S SEVERE AND NON-SEVERE IMPAIRMENTS

"The section[s] of [Plaintiff's] brief that argues error in the RFC are emblematic of the problems that plague the entirety of the brief as discussed above."[41] Plaintiff "asserts error in passing and always in a conclusory manner, without citing case law."[42] "[M]uch of [Plaintiff's] argument appears to be found in the word 'clearly' strategically placed before a conclusory assertion without any evidentiary or legal support."[43] That said, Plaintiff does "make meager attempts at developing some arguments in this case–albeit with a dearth of case law . . . ."[44] We will begin with a review of the standards applicable to the RFC assessment generally to make clear the standards an ALJ is held to.

"The ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations."[45] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[46] When making an RFC

---

[41] *Dejesus*, 2024 WL 4351449, at *7.

[42] *Id*.

[43] *Id*.

[44] *Id*.

[45] *Chandler*, 667 F.3d at 361.

[46] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)) (internal quotation marks omitted).

determination, "the ALJ must consider all evidence before him."[47] Indeed, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties."[48] Where "a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."[49] A court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence."[50]

An ALJ must "set forth the reasons for his decision" in a clear enough articulation that allows for meaningful judicial review.[51] An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," but must ensure "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."[52] The ALJ's decision must "be accompanied by a clear and satisfactory explication of the basis on which it rests."[53]

---

[47] *Burnett*, 220 F.3d at 121.

[48] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

[49] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)) (internal quotation marks omitted).

[50] *Wilder v. Kijakazi*, No. 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021) (citing *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)).

[51] *Burnett*, 220 F.3d at 119.

[52] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

[53] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Applying these standards to the ALJ's decision, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ did not adequately articulate, "why he did not adopt the limitations from Claimant's treating sources, despite the length and quality of their treatment (more than two years for her psychiatrist, and more than 15 years for her primary care physician), as well as the medical records which support their opinions regarding Claimant's limitations." (Doc. 11, p. 14). As discussed more extensively above, the ALJ did adequately articulate why he did not find the Dr. Sherpa and Dr. Townsend's opinions persuasive. In doing so, the ALJ also inherently demonstrated why he rejected the limitations therein, explaining that the opinions, and thus their limitations, were not consistent with the medical evidence of record. (Admin. Tr. 27-28; Doc. 7-2, pp. 28-29). Accordingly, this argument fails.

Plaintiff alleges that "[t]he need for more significant limitations in Claimant's RFC were further confirmed by Claimant's testimony . . . ." (Doc. 11, p. 17) (footnote omitted). However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. Tr. 23; Doc. 7-2, p. 24). The ALJ then went on to thoroughly review and summarize Plaintiff's medical records to support that finding, identifying and explaining the inconsistencies between Plaintiff's testimony

and the medical evidence of record. (Admin. Tr. 24-26; Doc. 7-2, pp. 25-27). Therefore, arguments based on Plaintiff's testimony, alone, are improper.

Plaintiff asserts that,

as noted in many of the treatment notes, and as confirmed by the ALJ, Claimant's severe impairments include bipolar disorder, anxiety disorder, post-traumatic stress disorder and borderline personality disorder, and these conditions contribute to issues with Claimant's ability to remain on task, her concentration, focus, and memory, as well as her ability to interact with co-workers, the public and supervisors, that impact her throughout the day and get worse as the day progresses. While acknowledging these severe impairments, the ALJ includes no limitation concerning Claimant being off task, the need for unscheduled breaks, or expected absenteeism to deal with these impairments, despite many records that confirm that these impairments caused issues while Claimant tried to work.

(Doc. 1, pp. 16-17). Despite asserting that "many records" confirm the need for the limitations Plaintiff alleges are needed, Plaintiff provides no citations to anything in the record supporting the need for those limitations. We are not obligated to find that evidence for Plaintiff, and will not do so.[54]

Plaintiff also asserts that,

the record supports the need for Claimant to take unscheduled breaks to deal with cognitive issues caused by her multiple severe mental-health related impairments, which she would experience after trying to work for any extended period of time, and which issues might worsen with continued work and work-related stress. It is also reasonable to believe that Claimant would miss work after a couple consecutive days

---

[54] *Claxton*, 766 F.3d at 307 ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli*, 2016 WL 6821082 (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

of work, as exerting herself during the week would result in an increase in the limitations from her severe impairments that would get worse for her as the week progresses.

(Doc. 11, p. 19). Again, Plaintiff fails to cite to the parts of the record indicating these limitations were necessary for Plaintiff. And again, we are not obligated to find that evidence for Plaintiff, and will not do so.[55] Similarly, Plaintiff alleges that,

the ALJ failed to include proper limitations regarding Claimant (1) being off task more than 15% of the workday, (2) the need for unscheduled breaks, even if just one per day, 15 to 30 minutes in length, and (3) if Claimant could only have less than occasional interaction with supervisors and coworkers, (which, per the Vocational Expert would eliminate all of the jobs that Vocational Expert testified to), all of which would get worse as the day would go on due to Claimant's severe impairments, and all of which the Vocational Expert opined would render the Claimant unemployable. (Admin Tr. 72-74).

(Doc. 11, p. 20). Here, Plaintiff only cites to the transcript of the ALJ hearing where Plaintiff's attorney asked the VE hypothetical questions about how certain limitations would impact Plaintiff's ability to do the jobs the VE found available for Plaintiff. Again, Plaintiff cites to nothing in the record indicating these limitations were credibly established and we will not fulfill Plaintiff's obligation to point to evidence in the record for her.[56]

---

[55] *Claxton*, 766 F.3d at 307 ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli*, 2016 WL 6821082 (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[56] *Claxton*, 766 F.3d at 307 ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli*,

Plaintiff alleges that the ALJ "does not address how Claimant would be able to remain on task for a sufficient amount of time, or attend work in a sufficient amount, given the results of her 2019 Psychiatric Evaluation." (Doc. 11, p. 19). Plaintiff does not explain why a  psychiatric evaluation from 2019 would be relevant when Plaintiff was engaged in substantial gainful activity at that time, and when the alleged onset date of disability is March 20, 2020. (Admin. Tr. 43; Doc. 7-2, p. 44). Nor does Plaintiff point to what in the notes of that evaluation support her inability to remain on task or attend work a sufficient amount of time. The Court declines to develop Plaintiff's argument for her.

Plaintiff concludes that,

> [t]he ALJ further erred and or abused his discretion by failing to consider whether or not the case was appropriate for a Partially Favorable Decision for a closed period of time, due to the time periods that included Claimant's inpatient care for her mental-health related issues, and the time periods in between, which included a period of more than one year where Claimant was clearly incapable of working.

(Doc. 11, p. 20). This is a single sentence conclusion and not an argument. We will not develop Plaintiff's argument for her. Similarly, Plaintiff concludes that,

> [t]he ALJ erred and or abused his discretion in failing to properly consider Claimant's Hidradenitis Suppurativa (which may render Claimant to be unable to work for several days at a time, numerous times per year, while her wounds take time to heal) under the Listings Under 8.00, despite medical evidence which supported a finding that

2016 WL 6821082 (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

she met these Listings. (Admin Tr. Admin Tr. 1497, 1503, 2486, 2489 and 2492).

(Doc. 11, p. 23). This too is a single sentence conclusion and not an argument. Again, the Court declines to develop this argument for Plaintiff.

According to Plaintiff, "the ALJ fails to explain in setting forth Claimant's RFC how Claimant would be capable of working without any exertional limitations, despite issues from several ongoing pain-related impairments." (Doc. 11, p. 17). Plaintiff does not identify the "several ongoing pain-related impairments." *Id*. Nor, again, does Plaintiff point to specific parts of the record showing the need for limitations due to the "several ongoing pain-related impairments." *Id*. Moreover, to the contrary of Plaintiff's assertion, the ALJ notes that,

> while the claimant's medical records indicate the claimant was assessed with paravertebral tenderness (T12 to L5 level) and reported experiencing back pain (Exhibit 18F), the claimant's medical records also indicate the claimant denied having musculoskeletal symptoms during May 2020, August 2020, November 2020, and August 2021 (Exhibit 18F). Additionally, she was noted to be in no apparent distress in May 2020 (Exhibit 11F). Furthermore, during February 2021 the claimant reported doing well overall (Exhibit 20F). Moreover, during July 2021, the claimant reported going for walks (Exhibit 16F). In fact, despite the claimant's reported symptoms pertaining to her back, legs, and feet, the claimant's medical records do not indicate the claimant was assessed with any abnormal clinical examination findings pertaining to gait, station, and stance since her amended alleged onset date of disability (Exhibits 1F- 20F).

> Moreover, the claimant's medical records do not indicate the claimant was assessed with abnormal clinical examination findings pertaining to concentration when she reported experiencing back pain (Exhibit 18F). Additionally, while the claimant has utilized prescribed pain

medication, the claimant has not treated with any specialist or received any physical therapy treatment for any symptoms related to her obesity, lumbar spine, thoracic spine, and restless legs syndrome since her amended alleged onset date of disability (Exhibits 1F – 20F).

. . . .

. . . . Additionally, the opinions of the State agency medical consultants are consistent with the claimant's medical records pertaining to this matter, including the lack of any persistent treatment for symptoms related to any of the claimant's physical impairments and the lack of persistently documented abnormal clinical examination findings pertaining to the claimant's physical impairments since the claimant's amended alleged onset date of disability.

. . . .

However, Dr. Sherpa's opinion is not consistent with the lack of any persistent treatment for symptomatology pertaining to the claimant's spine impairment since her amended alleged onset date of disability . . . .

(Admin Tr. 18, 27-28; Doc. 7-2, pp. 19, 28-29). Accordingly, this argument, to the extent it is more than a conclusion, is unpersuasive.

Plaintiff also asserts that the ALJ failed to consider or account for, "the fact that Claimant lives in managed housing from Wellspan Philhaven;" the fact Plaintiff "has an intensive caseworker who assists with her activities of daily living;" Plaintiff's "documented outbursts and employment history with her pat [sic] relevant work;" Plaintiff's "inpatient treatment;" Plaintiff's inability to "perform her last full-time job, which resulted in her hours being cut;" or that the last time Plaintiff "tried

to maintain full-time employment she required extended inpatient psychiatric care." (Doc. 11, pp. 18-20). This is incorrect. The ALJ notes each of these in his decision: "[a]dditionally, the claimant has utilized case management and reported living in a supportive living facility;" "[t]he claimant testified that she is unable to work on a full-time basis because she gets very bad anxiety and starts to shake;" "[d]uring 2020 she needed to reduce the number of hours she works because she had a mental breakdown at work and went to a hospital;" "[s]he had difficulty doing the job due to her physical and mental state when working four to five days a week and became very sick, was not sleeping right, was a 'mess', and experienced more paranoia and anxiety when working more than two days;" and "the claimant's medical records indicate that the claimant received inpatient treatment." (Admin. Tr. 23-25; Doc. 7-2, pp. 24-26). Thus, we are not persuaded by this argument, to the extent it is more than a conclusion.

Plaintiff argues that,

The ALJ erred and abused his discretion in failing to consider the effect of Claimant's other impairments, including her Hidradenitis Suppurativa, which causes both wounds and hearing [sic] issues, rendering her unable to work for several days at a time, numerous time per year while her wounds take time to heal (Admin Tr. 1497, 1503, 2486, 2489 and 2492), or with regards to her diagnosed spinal stenosis, or in regards to the previously identified severe impairments of osteoarthritis of the knees or generalized anxiety disorder. In fact, the ALJ spent little time, and in most cases no time, considering or discussing these specific disorders (all of which are confirmed in Claimant's treating records and in her testimony), and offers almost no limitation (including no exertional limitations) in particular regarding

any of these impairments, certainly insufficient limitations regarding the need for Claimant to take frequent breaks, as Claimant's pain and issues with her back, knees and Hidradenitis Suppurativa all get worse with activity, such as would be required in those occupations identified by the ALJ which Claimant would be capable of performing, which were found by the Vocational Expert in response to hypotheticals from the ALJ.

. . . .

. . . the ALJ should have considered the above conditions to be severe, as they have more than a slight impact upon Claimant's ADLs, and as a result, the ALJ should have still considered the limitations related thereto in setting forth Claimant's RFC. It is clear from the ALJ's Decision that he spent very little, if any time, considering these disorders, and the limitations related thereto, despite the number and severity of these disorders, many of which would have an impact upon Claimant's ability to function on a regular basis. In addition, in light of these ongoing impairments, the ALJ should have included some exertional limitations in terms of Claimant's RFC.

(Doc. 11, pp. 22-23).

First, Plaintiff references "the previously identified severe impairments of osteoarthritis of the knees or generalized anxiety disorder." (Doc. 11, p. 22). The Court does not know what Plaintiff means by this. The ALJ decision at issue in this case is the first ALJ decision issued for these applications, and Plaintiff does not identify any previous claims she filed where these impairments were found severe. Further, Plaintiff cites to nothing in this record indicating she complained of knee pain or was diagnosed with osteoarthritis of the knee. The Court will not go hunting in the record on Plaintiff's behalf. As to Plaintiff's mention of generalized anxiety disorder, we note that the ALJ found Plaintiff to have the severe impairment of

"anxiety disorder." (Admin. Tr. 18; Doc. 7-2, p. 19). It is unclear to the Court, nor does Plaintiff explain, what the significance is, if any, of the 'generalized' label appearing in front of 'anxiety disorder.' Further, the ALJ acknowledged Plaintiff's generalized anxiety disorder in his discussion of Dr. Townsend's opinion, noting that Dr. Townsend cited to Plaintiff's diagnosed generalized anxiety disorder to support her opinion. (Admin. Tr. 27; Doc. 7-2, p. 28).

Regarding Plaintiff's spinal stenosis, at step two the ALJ noted that Plaintiff alleged: difficulty driving due to her back pain, experiencing "stabbing back pain with a sensation of needles that go up and down her spine three to four times a week," experiencing a "burning pain" in her back "if she stands too long," and experiencing back pain despite medication. (Admin. Tr. 18; Doc. 7-2, p. 19). The ALJ noted that Plaintiff's medical records indicated she was assessed with paravertebral tenderness and reported experiencing back pain, but that she denied having back pain in May 2020, August 2020, November 2020, and August 2021. *Id*. The ALJ also noted that while Plaintiff utilized pain medication, she had not treated with a specialist or received any physical therapy for symptoms related to her spine. *Id*. In discussing Dr. Sherpa's opinion, the ALJ noted that there was a "lack of any persistent treatment for symptomology pertaining to the claimant's spine impairment since her amended alleged onset date of disability . . . ." (Admin. Tr. 28; Doc. 7-2, p. 29). Plaintiff is therefore incorrect in her assertion that the ALJ did not consider the effect of her

spinal stenosis in crafting the RFC. Further, even to the extent the ALJ should have found the spinal stenosis to be a severe impairment, such an error is not harmful because the ALJ nevertheless considered the effects of it when crafting the RFC.

As to Plaintiff's Hidradenitis Suppurativa ("HS"), at step two the ALJ noted that Plaintiff "alleged having 'bumps' and lesions on her body that hurt her," and that "she has difficulty walking sometimes secondary to 'bubbles' in her groin region and experiences it ever other day." (Admin Tr. 19; Doc. 7-2, p. 20). The ALJ also noted that Plaintiff indicated she would experience "more pain if she worked more than two shifts due to the increased physical activity and walking." *Id*. The ALJ further noted that in January 2021, Plaintiff was noted to have no active lesions at a medical appointment, and that while the medical records indicated Plaintiff had used some topical ointments for her skin symptoms, the medical records did not indicate Plaintiff was assessed with any skin lesions or sought any treatment for symptoms related to her skin after January 2021. The ALJ noted that in May 2020, August 2020 and November 2020 Plaintiff's medical records indicate she denied experiencing any symptoms related to her skin. *Id*. The ALJ acknowledged that Plaintiff alleged disability secondary to, in part, her HS. (Admin. Tr. 23; Doc. 7-2, p. 24). Finally, the ALJ noted that the state agency medical consultants' opinions discussed Plaintiff's HS, and that the opinions included "explanatory comments" that referenced to "some abnormal clinical findings pertaining to" Plaintiff's HS. (Admin. Tr. 27; Doc. 7-2,

p. 28). Plaintiff is therefore incorrect in her assertion that the ALJ did not consider the effect of her HS in crafting the RFC. And again, even to the extent the ALJ should have found the HS to be a severe impairment, such an error is not harmful because the ALJ considered the effects of it when crafting the RFC.

Finally, Plaintiff argues that the ALJ failed to adequately articulate "why he did not consider various medical records that support more significant limitations from Claimant's identified severe impairments, as cited below . . . ." (Doc. 11, p. 14). Plaintiff then provides a list of fourteen (14) "issues related to" her severe impairments, "as well as several that the ALJ should have found to be severe." (Doc. 11, pp. 14-15). Plaintiff then provides a list of 69 pages in the transcript in support of this assertion, without indicating which page supports which "issue." (Doc. 11, p. 15). Plaintiff then argues that "[m]any of these records and issues are not noted by the ALJ in his decision" because "the ALJ focuses on a few records showing only temporary improvement by Claimant, and as such, the resulting RFC from the ALJ is not reflective of Claimant's actual limitations, nor is the RFC from the ALJ reflective of a consideration of the entire record in this matter." (Doc. 11, pp. 15-16). This is simply not accurate.

Of the 69 pages Plaintiff cites, 35 are medical records dated before the alleged onset date, when Plaintiff was engaging in substantial gainful activity, (Admin. Tr. 42-44; Doc. 7-2, pp. 43-45),  meaning that at the time of those records, Plaintiff was

"not disabled regardless of how severe her physical or mental impairments [were] and regardless of her age, education, and work experience." (Admin. Tr. 16; Doc. 7-2, p. 17).[57] Of the remaining 34 pages, 26 pages are medical records documenting Plaintiff's hospital admission for inpatient mental health treatment, with Plaintiff's alleged onset date being the date of her admission.[58] (Doc. 11, p. 15). Of the eight remaining pages, seven are specifically cited to by the ALJ by Exhibit number (two of those seven pages are duplicative and the ALJ cites to one of the two identical pages).[59] (Admin. Tr. 18-28; Doc. 7-2, pp. 19-29). The one page that is not cited by the ALJ, Admin. Tr. 2862, is from Community Services Group and rates Plaintiff's "independent self-care for physical and mental health." (Doc. 11, p. 15) (citing Admin. Tr. 2862). It is unclear whether it is truly a medical record and if a medical professional made the notation. Plaintiff is therefore incorrect in her assertions that the ALJ fails to note "many" of the issues and records she lists, that the ALJ only focused on "a few" records that only showed temporary improvement, and that "as such" the RFC is not reflective of her actual limitations or reflective of consideration of the entire record. (Doc. 11, p. 15). Moreover, while the ALJ did not cite to one of the pages Plaintiff lists, "we do not expect the ALJ to make reference to every

---

[57] *See* 20 C.F.R. § 404.1571; 20 C.F.R. § 416.971.

[58] Admin. Tr. 1126, 1132, 1138, 1140, 1150, 1153, 1166, 1172, 1177, 1186, 1204, 1219, 1220, 1228, 1231, 1273, 1274, 1371, 1642, 1651, 1652, 1954, 2188, 2213, 2252, 2337.

[59] Admin Tr. 2514, 2764, 2846, 2909, 2943, 2959, 3110.

relevant treatment note in a case where the claimant, such as [Plaintiff], has voluminous medical records, [but] we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."[60] The ALJ did just that.

In sum, none of Plaintiff's arguments that the ALJ erred and abused his discretion by failing to consider limitations from Plaintiff's severe and non-severe impairments are persuasive. The Court finds that the ALJ's RFC assessment was supported by substantial evidence.

We end by noting that, once distilled, the overarching theme of Plaintiff's arguments in this section is that the ALJ interpreted the record incorrectly, and that the Court should accept her analysis of the record over the ALJ's. However, even if the Court agreed and believed the ALJ did interpret the record incorrectly, it would not matter.[61] We cannot reweigh the evidence.[62] The question before the Court is not whether the Court agrees with the ALJ's interpretation of the evidence or even whether the Court agrees with the ALJ's decision. The question is simply whether the ALJ's decision is supported by substantial evidence. Here, it is.

---

[60] *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).
[61] The Court expressly takes no opinion on the 'correctness' of the ALJ's interpretation of record.
[62] *Chandler*, 667 F.3d at 359.

## V.   CONCLUSION

For these reasons we find that Plaintiff's request that the Court reverse the administrative decision of the ALJ, remand Plaintiff's case for a new hearing, or award benefits will be denied. An appropriate order will issue.

Date: October 28, 2024                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge